CFK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

Earlando Samuel,
_____
            pro se
_____

_____

_____
*(In the space above enter the full name(s) of the plaintiff(s).)*

2 0        1 0 7 4

- against -

New Castle Housing Authority (NCCHA) and,
_____

Robert Rizzo of NCCHA and
_____

Terri Stuiber of NCCHA and
_____

Assunta Lucy of NCCHA and
Sharonda Spencer of NCCHA and
_____

Matthew Alexander of NCCHA and
_____

Greenlawn Apartments, LLC (GA) and
_____

"John Doe" owners of GA and
_____

Naomi Scott of GA and
_____

Donnie Garnett of GA and
_____

"see attached"
_____
*(In the space above enter the full name(s) of the defendant(s). If you
cannot fit the names of all of the defendants in the space provided,
please write "see attached" in the space above and attach an
additional sheet of paper with the full list of names. The names
listed in the above caption must be identical to those contained in
Part I. Addresses should not be included here.)*

**COMPLAINT**

Jury Trial: ☒ Yes   ☐ No

(check one)

FILED

FEB 2 5 2020

KATE BARKMAN, Clerk
By_____ Dep. Clerk

I.     **Parties in this complaint:**

A.     List your name, address and telephone number. If you are presently in custody, include your identification
       number and the name and address of your current place of confinement. Do the same for any additional
       plaintiffs named. Attach additional sheets of paper as necessary.

| Plaintiff | | |
|---|---|---|
| | Name | Earlando Samuel |
| | Street Address | 207 Parker Place |
| | County, City | Glen Mills |
| | State & Zip Code | Pennsylvania 19342 |
| | Telephone Number | 610 241 7537 |

B.    List all defendants.  You should state the full name of the defendants, even if that defendant is a government agency, an organization, a corporation, or an individual.  Include the address where each defendant can be served.  Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1

Name New Castle County Housing Authority

Street Address 77 Reads Way

County, City New Castle

State & Zip Code Delaware 19720

Defendant No. 2

Name Robert Rizzo of NCCHA

Street Address 77 Reads Way

County, City New Castle

State & Zip Code Delaware 19720

Defendant No. 3

Name Terri Stuiber of NCCHA

Street Address 77 Reads Way

County, City New Castle

State & Zip Code Delaware 19720

Defendant No. 4

Name "see attached"

Street Address

County, City

State & Zip Code

## II.    Basis for Jurisdiction:

Federal courts are courts of limited jurisdiction. Only two types of cases can be heard in federal court: cases involving a federal question and cases involving diversity of citizenship of the parties. Under 28 U.S.C. § 1331, a case involving the United States Constitution or federal laws or treaties is a federal question case. Under 28 U.S.C. § 1332, a case in which a citizen of one state sues a citizen of another state and the amount in damages is more than $75,000 is a diversity of citizenship case.

A.    What is the basis for federal court jurisdiction? *(check all that apply)*
        ☒ Federal Questions        ☒ Diversity of Citizenship

B.    If the basis for jurisdiction is Federal Question, what federal Constitutional, statutory or treaty right is at issue? 24 CFR sec 982.401 - Housing Quality Standards   (HQS)

18 U.S.C. sec 241 -   Conspiracy Against Rights

"see attached"

C.     If the basis for jurisdiction is Diversity of Citizenship, what is the state of citizenship of each party?

Plaintiff(s) state(s) of citizenship  Pennsylvania

Defendant(s) state(s) of citizenship  Delaware and Pennsylvania

**III.     Statement of Claim:**

State as briefly as possible the facts of your case.  Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.     Where did the events giving rise to your claim(s) occur?  "see attached"

B.     What date and approximate time did the events giving rise to your claim(s) occur?  "see attached"

C.     Facts:  "see attached"

What happened to you?

Who did what?

Was anyone else involved?

Who else saw what happened?

**A. List Of Defendants – Cont.**

5.  Sharonda Spencer Housing Program Assistant
77 Reads Way, New Castle, DE 19720

6 Matthew Alexander, Inspection co ordinator
77 Reads Way, New Castle, DE 19720

7.  Shannon    Sec 8 Inspector
77 Reads Way, New Castle, DE 19720

8. Dana Long, Inspector
77 Reads Way, New Castle, DE 19720

9.  John Doe" Housing Choice inspectors of the NCCHA responsible for doing the HQS
inspections at my former residence, 928 Janvier Ct., Middletown, De 19708,  during my
residence there.
77 Reads Way, New Castle, DE 19720

10. "John Doe Owners" of Greenlawn LLC
910 Janvier Ct Middletown DE 10709

11.Donnie Garnett, Maintenance
 910 Janvier Ct Middletown DE 10709

12. "John Doe Owners" of Wright MultiFamily LLC
905 West Sproul Road, Suite 208 Springfield, PA, 19064
910 Janvier Ct Middletown DE 10709

13. Fairville Management Company LLC
726 Yorklyn Rd Ste 200, Hockessin, DE 19707

**II. B Basis For Jurisciction –Cont.**

18 U.S. Code § 241. Conspiracy against **rights**

24 CFR § 100.400 - Prohibited interference, coercion or intimidation.

**42 U.S.C. 12101** et seq., Americans with Disabilities Act of 1990 (ADA)

42 U.S. Code § 3617 - Interference, coercion, or intimidation

### III. STATEMENT OF CLAIM

1. Plaintiff is a 68 year old disabled black male with "invisible disabilities". Invisible Disabilities are medical conditions that interfere with the usual activates of daily life, but are not immediately apparent to others. The term *invisible disabilities* also refers to symptoms such as debilitating pain, fatigue, dizziness, cognitive dysfunctions, brain injuries, learning differences and mental health disorders, as well as hearing and vision impairments. These are not always obvious to the onlooker, but can sometimes or always limit daily activities, range from mild challenges to severe limitations and vary from person to person.

2. In 2013 I lived at the Frazer Place For The Elderly And Disabled in Smyrna, De. On May 20, 2013, I submitted my notice to vacate to the Delaware State Housing Authority.. I had 40 days to find new housing, clean, and vacate the premises. I was "Ported Out" to the New Castle County Housing Authority (NCCHA), 77 Reads Way, New Castle, DE 19977

3. Previously on or about May 16th, 2013, I had applied for an apartment at Greenlawn Apartments, 910 Janvier Ct., Middletown, De., 19709 for myself and my live in aide. Gteenlawn Apartments is a Tax Credit property. **A tax credit property is an apartment complex owned by a landlord who participates in the federal low-income housing tax credit program**. These landlords get to claim tax credits for eligible buildings in return for renting some or all of the apartments to low-income tenants at a restricted rent.
**Annual Certification**
The owner must certify to the Public Housing Authority (PHA) ( Delaware State Housing Authority), under penalty of perjury, at least annually for each year of the 15-year compliance period, the Owner's Certification of Continuing Program Compliance (HTC 12), or other forms designated, that the project is in compliance with the requirements of Treasury Regulations Section 1.42-5 paragraph (c)(1), certification and review provisions. The owner's certification requires the owner to certify that the project meets the following for the preceding 12-month period:
• Each building in the project is and has been suitable for occupancy, taking into account local health, safety and building codes (or other habitability standards), and the state or local government unit responsible for making building code inspections did not issue a report of a violation for any building or low income unit in the project.

4. The apartment that myself and my aide was shown by Naomi Scott, manager, was addressed in the 940's of Janvier Ct. It was very clean with fairly new appliances and no visible signs of mold or any other defects. I had told Naomi Scott, Manager of Greenlawn apartments, that one of the reasons that I was moving from my then current residence was because of mold infestation (Frazier Place, Smyrna, De.) and that we were both allergic to it. I told her that I would take the unit and we made an oral agreement for that unit. **(The "Bait")**

5. In a letter dated June 17th, 2013, I was notified by "Assunta Lucy", Housing Program Assistant, of the New Castle County Housing Authority (NCCHA), *of the Department Of Community Services*, New Castle County, Delaware, that my request for tenancy with Greenlawn Apartments had been approved with explicit instructions to not to contact NCCHA in regards to the status of the inspection but direct any questions in regards to the inspection to the Landlord, (Greenlawn Apartments). (Exh. 1) **(The PHA is required to conduct an initial inspection for each unit as part of the tenancy approval process discussed in Chapter 6. The family and owner must be notified of the inspection results.** *Chapter 10: Housing Quality Standards 10-6* HQS INSPECTION PROCESSES AND PROCEDURES/ Initial Inspection Process and Procedure).

6. On or about June 21st, 2013 and after the credit and criminal background checks and reference check was done, I was notified by Naomi Scott via postal mail that I had been approved for the unit and was mailed move in instructions in a letter dated May 17th, 2013 for an apartment with the address of 928 Janvier Court. **(The "Switch").**

7. I did not get an initial move in inspection report from the NCCHA, in violation of *Chapter 10: Housing Quality Standards 10-6* HQS INSPECTION PROCESSES AND PROCEDURES/ Initial Inspection Process and Procedure), but I was notified by Naomi Scott that the apartment had passed the Section 8

inspection and that everything was cleared for me to move in and to come into her office on 6-28-'13 to sign the lease and was told that I would have to pay an additional 147.00 for the 3 days left in June. When I arrived to sign the lease, Naomi told me that she had switched me from the apartment that I had originally agreed to take and was led to believe that I had gotten, to a unit addressed 928 Janvier Ct. The reason she gave me that "it has a better view" and it was comparable to the original. It was not. At first glance, he shower stall was full of black mold, the apartment needed a thorough cleaning, the stove door wouldn't open all the way because the door would hit the refrigerator. This doesn't allow the oven to be used safely because the door cannot be opened fully. The bottom rack can't even be removed.. The small size of the captains' kitchen doesn't allow a full size refrigerator and a full size stove without some interference. (Exh 2)

**8.** I then realized that I was a victim of Naomi Scott of Greenlawn Apartments version of the illegal "Bait and Switch" con game. (Consumer Law; The dishonest practice of trying to lure customers into a business establishment by publicizing an attractive offer but with no intention of delivering the goods *advertised.* (An example of *bait* and *switch* in this context might be advertising a *beautiful, palatial* apartment that isn't really available, and then trying to get someone to take the basement apartment in the same building.) **Bait** and **switch** tactics are illegal in the United States, but they are used in virtually every industry. In violation of the Federal Trade Commission and Delaware Deceptive Trade Practice Laws.

9. On July 7, 2013, I sent Naomi Scott a complaint letter about a needed repair in my unit. She called me on my phone and told me in a very angry and demanding voice to never send her written complaints again.

10. An NCCHA inspection was performed in my unit on 1-27-2014. I received a letter dated 2-7-2014 that my unit, despite the obvious deficiencies with the kitchen stove, hot water heater and the house heating system, passed an HQS inspection.(Exhs 2,2b,3,4)

11. For medical reasons and out of fear of retribution, I followed her orders to not complain about conditions until February 1, 2015 and sent Naomi another complaint letter. What followed was a campaign of harassment and unfair treatment that I was the target of initiated by Greenlawn Apartments and manager Naomi Scott, because of my disobeying her order for me to stop complaining about conditions in my unit.

12. On February 18th, 2015, I was admitted to the emergency room at Christiana Care for mild smoke inhalation. Whenever I would turn the heater thermostat temperature above 80, fumes would come out of the heat vents located in the ceilings. I had never had to turn the heat up that high previously, but it was unseasonably cold at that time. **This is a violation of HQS 10 8** "The heating and/or air conditioning system must be in proper operating condition.**Improper operating conditions, including all conditions that may be unsafe, such as broken or damaged source vents, flues, exhausts, gas or oil lines that create a potential fire hazard or threats to health and safety are not permitted."**

13. On March 1st, 2015, I sent a letter (Exh 5) to the owners of Greenlawn Apartments, East Coast Property Management and Naomi Scott outlining the violations and wrongdoings occurring at Greenlawn Apartments. I also informed my caseworker, Assunta Assante, Housing Specialist, of the unfair treatment that I was receiving.

14. Shortly after that letter was delivered to Greenlawn Apartments, the harassment by Naomi Scott ceased temporarily. My unit was inspected by East Coast Property Management. Shortly after that, East Coast dropped Greenawn Apartments as a client.

15. Shortly thereafter and in a letter dated 11-09-2015 from my NCCHA caseworker Assunta Lucy, Housing Specialist. I was told that my right to have a live in aide (Exh 6, 7) had been terminated without

any notice and my out of pocket rent would increase by approximately 300%. The reason that was given was because I hadn't reported that my live in aide was no longer in the unit, which was an untruth. We had that conversation by e mail on February 14, 2014. (Exh 8)  and I sent a letter to Naomi Scott, manager of Greenlawn. That termination was in violation of **Title 24 §982.316(b)(1,2,3)  Live-in aide**.

(a) A family that consists of one or more elderly, near-elderly or disabled persons may request that the PHA approve a live-in aide to reside in the unit and provide necessary supportive services for a family member who is a person with disabilities. The PHA must approve a live-in aide if needed as a reasonable accommodation in accordance with 24 CFR part 8 to make the program accessible to and usable by the family member with a disability. (See §982.402(b)(6) concerning effect of live-in aide on family unit size.)
(b) At any time, the PHA may refuse to approve a particular person as a live-in aide, or may withdraw such approval, if:
(1) The person commits fraud, bribery or any other corrupt or criminal act in connection with any federal housing program;
(2) The person commits drug-related criminal activity or violent criminal activity; or
(3) The person currently owes rent or other amounts to the PHA or to another PHA in connection with Section 8 or public housing assistance under the 1937 Act.
My right to a live in aide can't be terminated unless I am in violation of **Title 24 §982.316(b)(1,2,3) Live-in aide(b)(1)(2)(3)**. 11-18-2015 I requested an informal hearing and requested the authority(s) that was used to by the NCCHA for the termination of my right to have a live in aide and that he informal hearing be recorded. Those requests were ignored.

16. I applied to Community Legal Aid in Wilmington, DE. for representation at the hearing because of an impairment. It takes me a substantially longer amount of time to find the correct words than a normal person. Community Legal Aid is the sole organization for the State of Delaware that is tasked with the job of representing individuals in the Housing Voucher Program administered by the NCCHA. After a two hour wait, I wasn't seen by an Attorney in the office but the attorney and a paralegal named "Gus" phoned me at home the evening before the hearing. They took the same stand as the accusers which was my unseen impairments did not warrant me having a live in aide and Gus chimed in that I drive a car. I was denied their assistance. I received a generic letter dated December 1, 2015 from a Melissa R. Allman, Staff Attorney for CLA that stated things that were entirely different from the phone conversation. (Exh 9)

17. At the hearing I told Robert Rizzo and Terri Stuiber that I had reported that more than a year and a half prior to their about my live in aide's illness and that she would be away for an indefinite amount of time.  That could not be disputed but when that didn't work for NCCHA, Terri Stuiber, Manager and Robert Rizzo, Director told me about a complaint about unreported income which they couldn't confirm, which turned out to be untrue and when that didn't work, they resorted to attacking the validity of my disability status by questioning and harassing my primary care physician and other things as outlined in my complaint to the Attorney Generals office dated January 8th, 2016. Rizzo even followed me out to the lobby where he asked me what kind of car I was driving. He made jest of the fact that I was able to drive while claiming to be disabled. He and others present had a good laugh.

18. I lost my case in regards to my right to have a live in aide and the hearing outcome was found in favor of the NCCHA by Robert Rizzo and Terri Stuiber of NCCHA. That unexpected 273% rent increase came at a very bad time for me and caused me to default on two tradelines which impacted my creditworthiness severely and made my credit rating go from a very good to poor and a substantial drop in my credit score. This also has a serious impact on my ability to find other housing. The very first thing renters look at is your credit report/score.

19. Due to the unfair treatment and the traumatic events that I was being subjected to by the defendants, on or about January 1, 2016,  I had to seek professional psychiatric help for the following symptoms that I was and still presently experiencing:
    **Reliving** – Flashbacks, hallucinations, nightmares of the incident(s)
    **Avoiding** – Avoiding people, places, things, or memories that remind of the trauma

*3*

**Excessive arousal** -- Increased alertness, anger, fits of rage, irritability, or hatred, difficulty sleeping or concentrating
**Negative thoughts or feelings such as guilt**
These symptoms are in line with a person suffering from Post Traumatic Stress Disorder (PTSD). I went through therapy and also I was prescribed 25mg of Paroxetine (Paxil) and 50mg of Vistaril for those symptoms.

20. In May of 2016 and after my initial complaint about the unfair treatment that I was receiving at the hands of the defendants to the Delaware State Attorneys Office, Civil Rights Division(Exh 10), my out of pocket payment was reduced to back to where it was originally before the informal hearing.

21. An NCCHA inspection was performed in my unit on 1-31-2017. I received a letter dated 2-2-2017 that my unit, despite the obvious deficiencies with the kitchen stove and the house heater, passed an HQS inspection.

22, On November 22, 2017 due to pressure buildup because of the sediment that had built up in the 21 year old hot water heater the a pipe burst. Due to the fact that there were no water shut off valves for my apartment and the shutoff valve for the hot water heater wasn't working properly, water ran unchallenged at a very high pressure into my apartment. ( "shutoff valve wouldn't fully close"}

23. Within minutes of the hot water heater pipe bursting, I called the emergency number for Greenlawn Apts and maintenance responded within the hour.

24. Maintenance said that he could not stop the water from running and the apartment manager, Naomi Scott was called to come and assess the situation. After she made her assessment of  the situation, I was informed by her that due to the holidays (Thanksgiving),nothing could be done to stop the water from spewing into my apartment until after the 27th of November.

25. Water ran into my apartment for at least 5 days and there was so much damage that the living room, front utility room, hallway going downstairs and the tenant's apartment below me had to be rebuilt. I had to use the loss of use clause in my renters insurance and find housing elsewhere out of State in Pennsylvania because none was offered to me by Greenlawn Apts. or Fairville Property Mgmt. even though there were other vacant units on the premises.

26.On December 1, 2017 I came to survey the situation and to pay my out of pocket rent. All of my furniture, electronics, and other personal items were damaged by the water. Naomi Scott told me that she would not deposit my rent check or my neighbors, whose apartment also suffered substantial damage. Naomi Scott led me to believe that I was going to be moved into another unit. That did not happen.

27.  Between December, 2nd through January 2nd, 2018, I was told by Naomi Scott, that my unit was ready for me to move back in no less than 5 times even though  carpeting wasn't done, the drywall wasn't finished, painting hadn't started and there was no hot water at any water all. None of my personal belongings were moved out of the work areas. My downstairs neighbor suffered the same treatment.

28. After tiring of Greenlawns broken promises, on January 3, 2018, I gave Naomi Scott a Notice To Terminate The Lease  Pursuant to 25 Del.C.§5101to §5718 (THE DELAWARE RESIDENTIAL LANDLORD TENANT CODE) III **Condition of the rental unit**., 3.b. "The tenant may terminate the agreement at any time if a condition exists that deprives the tenant of a substantial portion of the benefit and enjoyment of the bargain the tenant made at the beginning of the rental period. To terminate, the tenant must notify the landlord in writing and give the landlord fifteen (15) days to remedy the condition complained of before terminating." And faxed a copy to Fairville Property Mgmt. and e mailed a copy to Sharonda  Spencer, my worker at the New Castle County Housing Authority. This would have enabled me to get my lease terminated through the Court and to get my security deposit returned and moving expenses.

29. To submit to the Court as evidence, on ar about January 9, 2018, I called the NCCHA inspection department to request a Complaint inspection. I spoke with Matthew Alexander and explained to him why I was requesting an Complaint inspection. I told him about the situation in my apartment and also the situation with the hot water.

HQS **10.7 COMPLAINT INSPECTIONS**

The PHA must investigate complaints about HQS matters that are registered by tenants, owners or the general public.
Violations resulting from complaint inspections are treated in the same manner as annual inspection violations. Failure to comply with violation notices issued from complaint inspections result in abatement of payment to owners and/or termination of program assistance for tenants. PHAs should schedule complaint inspections based upon the nature of the complaint. Staff that receive complaints should distinguish between emergency (life threatening) and routine matters and act accordingly.


Here are some items that are considered emergency but are not limited to:

- No water; and/or potable water

- **No hot water due to faulty water heater**

- No heat due to furnace not properly working, or no utilities."

30. On or about January 9, 2018 I received a phone call from "Shannon", a Section 8 inspector, and he set up a time for the next morning to do the complaint inspection. He arrived around 8:30 in the morning. He checked to see if I had hot water. He confirmed that I didn't but he said nothing about the age and *rusting condition of the hot water heater. It is 20 years old with a 5 year warranty. I* also told him to make note of the inoperative shut off valve for the hot water heater and the unfinished drywall work, smoke alarms, carbon monoxide alarm, and just the general shoddiness of the workmanship. Out of nowhere and to my surprise, he went through an inspection of my unit and he threatened to cite me for having an unkempt bedroom. I hadn't moved back in yet and work was still being done so I wondered what all this was about but the answer came to me when he started minimizing my Notice To Terminate the lease and it was clear to me when he made the statement that if I hadn't reported these defects to my caseworker Sharonda Spencer, which I hadn't, my participation in the Section 8 program would be terminated. None of this had anything to do with hot water and I considered it to be a veiled threat to terminate my voucher if I didn't stop complaining. As he was hurriedly leaving, I asked to make sure that he send me his findings of his complaint inspection in writing which I am entitled to.

31. To date, I haven't received those findings or any results or a record of that Complaint inspection and no other follow up inspection was done to confirm whether or not the situation with the hot water was completed in violation of **10.6 HQS INSPECTION PROCESSES AND PROCEDURES**
**Overview**
The purpose of HQS inspections is to ensure that housing is decent, safe and sanitary. This section discusses types of HQS program inspections PHAs are required to conduct, methods for conducting inspections, inspection scheduling, and HQS enforcement. Sample letters and notices are provided to help PHAs carry out inspections.
PHAs are required to conduct three types of inspections: initial, annual, and special inspections, including quality control inspections. **Inspections result in pass, fail, or inconclusive reports.**
**Pass inspections require no further action by the PHA. Fail or inconclusive inspections require follow-up reinspections or PHA verification to confirm the correction of the HQS infractions.**
Depending upon the nature of the item responsibility for correction of fail or inconclusive items

may be the responsibility of the owner or tenant. Failure to comply with correction notices results in owner or tenant sanctions.

32. Instead of replacing the defective hot water heater in my uni (Exh, 3) which Greenlawn routinely does when these old hot water heaters build up excessive pressure in other tenants apartments and cause leaks, on or about January 15th, 2018 Greenlawn's maintenance personnel (Fairville Property Managemant) did a quickie repair that was enough to get hot water in my apartment.

33. On January 17th, 2018 I moved back into my apartment. I notified my worker Sharonda Spencer of that and that I wasn't going to pursue the Court action. I was asked by her if the unit had hot water and was in compliance. I am not a Housing inspector but to the best of my knowledge it was in compliance because the unit has hot water. She requested that in writing.

34. I got a letter dated 2-14'18 from the NCCHA that it was time for my annual re certification for participation in the Voucher program. I thought that was odd as it was time for my annual inspection. Amongst other things, I was told to submit a copy of my latest bank statement. As I had done in the past, I downloaded and printed out a copy of my account summary. In the past I would have had my annual inspection done before the certification.

35. Two months later I received an e mail from Sharonda Spencer, Housing Program Asisstant telling me that now I need to submit two more bank statements with all the pages of my bank statement.. When I questioned her about the reasoning and told her about the privacy issues (your whereabouts can be tracked, spending habits, etc.), she threatened me with termination proceedings if I didn't comply. I sent her the two redacted statements (blacked out) requested that contained the exact same information as a bank summary.

36. In an act of retaliation for sending the redacted copies of my bank statements, my out of pocket rent was increased by 37%. To lead me to believe that that out of pocked increase was due to an increase in the payment to my landlord from $880.00 to $995.00 approved by Robert Rizzo, HCV administrator for the NCCHA. In reality, the monthly rent increase is $950.00 which was approved by Robert Rizzo..

37. My NCCHA annual inspection was performed in my unit on May-24-2018 instead of usual February date for my annual inspection in violation of **10.2 HOUSING QUALITY STANDARDS GENERAL REQUIREMENTS "At least annually, it is the responsibility of the PHA to conduct inspections of units to determine compliance with HQS prior to the execution of the entire term of the assisted lease.".** which was very suspicious to me, an annual inspection is every 12 months. I received a letter dated 6-16-2018 that my unit, despite the obvious deficiencies with the kitchen stove, the hot water heater and the house heater, passed an HQS inspection. The hot water heater at the time of that inspection was coming apart at the seams and other problems with it. The May 24th inspection done by Brandon or Shannon (the same person that did the Complaint inspection) of the NCCHA inspection department. The bannister for the stairway going downstairs was loose and I brought that to the inspector's attention. He told me that it would pass his inspection because I wasn't disabled.

38. On June 7, 2018 I found a letter attached to my front door from Fairville Management Company, Greenlawn Apartments and signed by Naomi Scott. The letter requested a copy of my renters insurance policy, contact person and their phone number in regards to water damage in my unit in regards to the November 24, 2017 water damage incident..(Exh 11)  I called Naomi and asked her why was she asking for my personal insurance information. She told me that she didn't know. I sent a letter denying that request. . My neighbor downstairs in 927 also suffered substantial damage to her unit from the water that was running downstairs from my unit and received the same letter. She asked my what it was about. Later I was told by that same neighbor that she had given them (Fairville, Greenlawn and Naomi) her insurance information.

39. I saw the paperwork where Greenlawn and Fairville property management actually put in a claim to get reimbursed for the damages to her apartment from the flooding incident that occurred in November in

my apartment even though the cause of the damages was due to Greenlawn's negligence.(Shut off valve). There has been several of these incidents with the hot water heaters building up pressure. These incidents were responded to immediately and the how water heater were replaced. My hot water heater is 21+years old and had a 5 year warranty, Instead of replacing my defective hot water heater, they did a cheap fix and I was left with a very unsafe unit that made noises.

40. I had never been religious, just spiritual and I had never been a member of a Church but in June of 2018, at the urging of a friend, I attended a service at the Christian Church of Chester. I was baptized on September 3rd. 2018. I found a calmness and peace that I never experienced before whenever I attended service. I got some relief from the emotional pain and suffering and found the Church to be my best therapy.

41. On or about November 30th, 2018 I left my unit for an appointment. I had to turn around and come back because I had forgot something and when I got back home I found the maintenance man, "Donny" leaving my apartment. Before I asked him what was he doing in my unit without my permission, he said that he had to replace the filter for the gas heater. The filters were changed in June of '18. This is the same reason that he gave for two previous entry's into my apartment without my permission or me opening my door for him to enter. He gained entry by using a master key. I had sent Naomi Scott and Greenlawn a letter in regards to these right of entry violations previously and the right of entry violations had stopped.

42. On or about February 1st, 2019, my annual Housing Choice Voucher re-certification was scheduled. It was completed with a reduction in my out of pocked rent payment. What was missing was my annual re-certification inspection scheduling. I sent an e mail to Matthew Alexander, head of the NCCHA inspection department. He replied that my unit was inspected in May of 2018.

43. Being that I hadn't heard back from the HUD OIG, It was hit and miss for me to find the correct HUD agency to report these wrondoings to. I was directed to the HUD Philadelphia office of HUD, Office Of Public Housing but due to the federal government and HUD shutdown, I wasn't able to report these things until April of 2019. In their reply, only the matter of the live in aide was addressed.

44. Being that I hadn't had my annual inspection as of May 6, 2019 I inquired to Matthew Alexander of the NCCHA inspection department as to when would my annual inspection be scheduled. He e mailed me back and said would be done in November of 2019.  It wasn't done. My annual inspections are normally done in February. This is in violation of **10.6 HQS INSPECTION PROCESSES AND PROCEDURES Annual Inspection Process and Procedure**
The annual inspection process includes scheduling the unit for inspection, notifying owners and tenants of the inspection date and time, conducting the inspection, enforcing HQS requirements, and when necessary, taking action to abate payments and terminate HAP contracts and program assistance.
• The unit must be in compliance with HQS requirements throughout the assisted tenancy.
• **Each unit must be inspected annually during assisted tenancy to determine if the unit meets HQS. The inspection must be conducted within twelve months of the previous inspection** to meet SEMAP requirements discussed in Section 10.7.
• The PHA must notify owners and tenants of HQS deficiencies in writing, and indicate a time period in which to make HQS corrections of that the PHA complies with SEMAP requirements discussed in Section 10.7.
• The PHA must abate housing assistance payments to the owner for failure to correct an HQS Violation……

45. A visit by the exterminator was scheduled for July 1, 2019 whereas a paper bug trap is placed in the bathroom.  I waited for them and went to the store around 2 in the afternoon. When I got back I found that the exterminator had been in my unit. The exterminator had been let into my unit, without my permission or consent, by Donnie the maintenance person for Greenlawn. This is a violation of **Delaware Code**

**Chap. 55 Secs. 5507, 5509, 5510.** Landlord must give minimum 48 hrs **notice of intent** to enter....
......Landlord may enter at any time in case of an emergency without notice.  **Landlord may otherwise enter only with tenant consent**

46. On August 7, 2019, myself and my grand-daughter were watching TV when we heard the voice's of several men in the front room. We had been waiting for a scheduled service of the fire extinguishers. What happened again was that Donnie had used his master key to let himself and the service people into *my home without my permission or even waiting for me to let them in. This is a violation of* **Delaware Code Chap. 55 Secs. 5507, 5509, 5510.**  Landlord must give minimum 48 hrs. **notice of intent** to enter except for tenant requested repairs.  No requirement notice be in writing.  Landlord may enter at any time in case of an emergency without notice.  **Landlord may otherwise enter only with tenant consent**

47. On September 1, 2019 I sent Greenlawn a Cease amd Desist letter in regards to the illegal entries into my apartment. I requested written confirmation that they would Cease and Desist but my request was refused.

48. Even though Greenlawn did not go through a legal eviction to force me to move out of my unit, Greenlawn, et al,  in concert with the defendant's from the NCCHA's intentional failure to do its manifest duty amongst other things, took steps which made my life so miserable and so stressful that I had to seek medical attention. Along with their substantial interference with my enjoyment of my apartment and the lack of legal recourse for me, along with a course of conduct that was threatening, intimidating, alarming, and put me in fear of my safety. The motive behind the defendants' conduct was retaliation because I complained about unsafe conditions and exposed wrongdoings. I was left with no choice but to move out.

49. After giving notice, I moved out of Greenlawn's property and out of the NCCHA jurisdiction to another state and another PHA on November 30, 2019

50. To add insult to injury, Greenlawn withheld a substantial portion of my security deposit refund for no valid or legitimate reason.

51. The defendants' conduct was more than malicious and intentional. More than mere indignities, annoyances or petty oppressions but so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. The defendants' acted (1) intentionally; (2) their conduct was extreme and outrageous; (3) their conduct was the cause (4) of me suffering such severe emotional distress that I had to seek medical and spiritual help for the years of the **intentional infliction of emotional distress** I had to endure at the hands of the defendants'.

**Thomas P. Gordon**
**County Executive**



**Alan J. Matas**
**General Manager**

## Department of Community Services

*Evh.1*

*Evh 1*

## NOTICE OF RENT: INITIAL MOVE IN

June 17, 2013

**Earlando Samuel**
**604 Goldsborough Way**
**Smyrna DE 19977**

Dear Earlando Samuel,

Your "Request for Tenancy Approval" (RFTA) packet has been approved and forwarded to the inspection department to schedule an inspection. You must contact me prior to signing a lease with Greenlawn Apartments to determine a move in date. If you move into the new unit prior to the expiration date of your prior lease, you will be responsible for the full rent in the new unit.

UNIT ADDRESS: 928 Janvier Ct

**CONTRACT RENT : $ 760.00**
**SECURITY DEPOSIT: $ 760.00**

You must pay the tenant payment amount every month of $72.00 to the landlord. Failure to pay could result in termination from the Section 8 Program. If you pay $(zero) rent, you may be eligible for a Utility Reimbursement payment of **$ 0.00 You are reminded that it is illegal to pay your landlord more than specified.**

Please do not contact this office to inquire about the inspection. Any questions regarding inspection status must be directed towards the landlord.

Sincerely,
Assunta Lucy
Housing Program Assistant

*If you or anyone in your family is a person with disabilities, and you require specific accommodations in order to fully utilize our program and services, please contact the New Castle County Housing Authority, Terri Stuiber, 77 Read's Way, New Castle, DE 19720.*
**A TTY/TDD is also available for hearing impaired individuals at 302-395-5593.**

**77 Reads Way, New Castle, DE 19720**          **Phone: 302-395-5600  Fax: 302-395-5591**









E✗h 3







Exh 3

Exh 2b

County Executive

General Manager    *Exh 4*

Department of Community Services

Section 8

A

## Notice of Passed Inspection

Today is 2/7/2014                                    Next Rexam Date = 6/28/2014

*Tenant:*    **Samuel Earlando**

**928 Janvier Ct**

**Middletown, DE, 19709-**

*Address of Inspected Unit:*

**928 Janvier Ct**

**Middletown, DE, 19709-**

**This is to verify that the above unit was inspected on    *1/27/2014***

**and passes the HUD Housing Quality Standards and upgrades adopted by the New Castle County Housing Authority and approved by the Department of Housing and Urban Development.**

**By Authority:**

**New Castle County Housing Authority**
**A TTY/TDD is available for hearing impaired individuals at 302-395-5593**

*Inspector:*    *Dana Long*      *Unit#: 007929*

*Landlord:*     **Greenlawn Apartments**

**910 Janvier Court,**

**Middletown, DE, 19709**

*Agent:*

Exh 5

Date: March 1st, 2015

Naomi Scott, Property Manager
Greenlawn Apartments
910 Janvier Court
Middletown, DE 19709
302 376 1169 Phone
302 376 1026 Fax

East Coast Property Management
977 E Mastern Circle
Milford, DE 19963
1 302 941 4000
1 302 265 2512 - Fax

Greenlawn Associates, LP – Owner
910 Janvier Court
Middletown, DE 19709
302 376 1169 Phone
302 376 1026 Fax

Hi Naomi,

Enclosed you will find my out of pocket rent for March, 2015.

There is a maintenance issue that I would like to report. In the past, you had called me
and admonished me for putting these things in writing. I had verbally reported the
following by phone to maintenance as you had told me to do but it hasn't been addressed
yet.

1. The weather-stripping around the front door needs to be replaced. You can see
   light coming in around the door and cold air is coming in from the outside.

I have some issues that needed to have been addressed but I was unable to due to medical
reasons which I am still dealing with.

1. The day before my annual DSHA inspection, you called me and told me that
   "because you don't want anyone in your unit when you are not there, any
   inspection problems are on you because you wouldn't let me in to have a look
   around." The day prior to that, you had called to ask me if I would let you come
   over to take a look around and I told you no because I had to go out. I don't
   believe that anyone wants strangers in their home unless they have a legitimate
   reason. This is the third time you have called me and mentioned that subject so if
   I have inadvertently given up my privacy rights, please show me documentation
   to verify that.

2. On February 17, I was awakened by a smell of smoldering coals coming from the
   heater ducts and felt nauseous, headachy and jittery. I called David of

Ex h 5

maintenance and told him what was happening and asked if I should call the gas company which he said no to. when he came over he took a look at the heater and took the clogged filter out and said that the heater needed to be taken apart and cleaned but he might be able to do it the next day. I was told that if I wanted to stay in my unit, to leave the heater off or turned down from my usual setting of 70. After he didn't show up by 10 the next morning, I called you and after you came over and looked at the heater and I showed you how jittery and nervous I was due to the fumes. You made the determination that the situation was not an emergency and was told by you that you could not give me a time when the situation with the heater and the fumes could be addressed, hopefully in48 hours and again you mentioned that I don't like people in my apartment when I am not there. The next day, I went to Christiana emergency and was found to be negative for carbon monoxide poisoning but positive for mild smoke inhalation  When I got back home, I found that the panel had been put back on the heater and there were no more fumes coming from the vents. Thank you but I am concerned about your issue with me and my unwillingness to allow free reign to my home.

3. On one occasion several months ago, I was awakened by someone walking around outside of my bedroom.  It was the exterminator and when I asked him why he didn't ring the bell, he told me that the maintenance man let him in. I know for an absolute fact that the wind up bells that are on the door can't be heard upstairs in the back with the T V on. I also noticed new pest traps that had been put in the kitchen and bathroom. These non-emergency entries by service personnel were made without my consent. I believe that there should be something put in place, such as electric doorbells, to ensure safety and compliance of the Landlord Tenant Code.

4. I do misplace things and I have tore this place up looking for something very valuable for over a month now that I can't find. I have narrowed it down to when the last time I saw it so I am in need of names, dates, reasons and times of people that were allowed into my unit while employed by or agents of or doing business with Greenlawn Apartments with special attention to when I wasn't here, in order to help me to rule out people and establish timelines.

May I remind you of the following:

Delaware Code Chap. 55

§ 5505 Tenant's obligation relating to defective conditions.

 (a)  Any defective condition of the premises which comes to the tenant's attention, and which the tenant has reason to believe is the duty of the landlord or of another tenant to repair, shall be reported in writing by the tenant to the landlord as soon as is practicable. The tenant shall be responsible for any liability or injury resulting to the landlord as a result of the tenant's failure to timely report such condition.

70 Del. Laws, c. 513, § 3.;

§ 5509 Tenant obligation to permit reasonable access.

Exh 5

(a)  The tenant shall not unreasonably withhold consent for the landlord to enter into the rental unit in order to inspect the premises, make necessary repairs, decorations, alterations or improvements, supply services as agreed to or exhibit the rental unit to prospective purchasers, mortgagees or tenants.

(b)  The landlord shall not abuse this right of access nor use it to harass a tenant. The landlord shall give the tenant at least 48 hours' notice of landlord's intent to enter, except for repairs requested by the tenant, and shall enter only between 8:00 a.m. and 9:00 p.m. In the case of an emergency, defined as a verifiable immediate threat to life, health or property, the landlord may enter at any time.

70 Del. Laws, c. 513, § 3.;

§ 5510 Landlord remedy for unreasonable refusal to allow access.

(a)  The tenant shall be liable to the landlord for any harm proximately caused by the tenant's unreasonable refusal to allow access. Any court of competent jurisdiction may issue an injunction against a tenant who has unreasonably withheld access to the rental unit.

(b)  The landlord shall be liable to the tenant for any theft, casualty or other harm proximately resulting from an entry into the rental unit by landlord, its employees or agents or with landlord's permission or license:

(1)  When the tenant is absent and has not specifically consented to the entry;

(2)  Without the tenant's actual consent when tenant is present and able to consent; and

(3)  In any other case, where the harm suffered by the tenant is due to the landlord's negligence.

(c)  Repeated demands for unreasonable entry or any actual entry which is unreasonable and not consented to by the tenant may be treated by the tenant as grounds for termination of the rental agreement. Any court of competent jurisdiction may issue an injunction against such unreasonable demands on behalf of 1 or more tenants.

(d)  Every agreement or understanding between a landlord and a tenant which purports to exempt the landlord from any liability imposed by this section, except consent to a particular entry, shall be null and void  and also;

11 Del. C. 1953, § 1311

§ 1311 Harassment; class A misdemeanor.

(a)  A person is guilty of harassment when, with intent to harass, annoy or alarm another person:

Exh 5

(1)  That person insults, taunts or challenges another person or engages in any other course of alarming or distressing conduct which serves no legitimate purpose and is in a manner which the person knows is likely to provoke a violent or disorderly response or cause a reasonable person to suffer fear, alarm, or distress;

(2)  Communicates with a person by telephone, telegraph, mail or any other form of written or electronic communication in a manner which the person knows is likely to cause annoyance or alarm including, but not limited to, intrastate telephone calls initiated by vendors for the purpose of selling goods or services;

(3)  Knowingly permits any telephone under that person's control to be used for a purpose prohibited by this section;

(4)  In the course of a telephone call that person uses obscene language or language suggesting that the recipient of the call engage with that person or another person in sexual relations of any sort, knowing that the person is thereby likely to cause annoyance or alarm to the recipient of the call; or

(5)  Makes repeated or anonymous telephone calls to another person whether or not conversation ensues, knowing that person is thereby likely to cause annoyance or alarm.

(b)  Harassment is a class A misdemeanor.

Your prompt attention to these matters would be greatly appreciated.

Thank you,

Earlando Samuel
928 Janvier Court
Middletown DE 19709
443-270-9413
Easee2@gmail.com

cc/file

## Exhibit NV-4
## Verification of Need for Live-In Aide

*Exh 6*

Date:  8|2|12

To:  Veronica Cerny, MD
      1177 S. Governors Avenue
      Dover, DE 19904
      Telephone #:    1-302-674-4767
      Fax #:    1-302-674-4769

From:  Delaware State Housing Authority
       26 The Green
       Dover, DE 19901
       Telephone #:    1-302-739-7419
       Fax #:    1-302-739-8240

Subject:   Verification of Information Supplied by an Applicant / Tenant for Housing Assistance.

Re:   Name:    Earlando Samuel   V # E932
      Address:    604 Goldsborough Way, Smyrna, DE 19977

The individual named above has applied for residency or is currently residing in a community that was developed under the U.S. Department of Housing and Urban Development, U.S. Department of Agriculture (Rural Housing) or Section 42 of the IRS code which is administered by the State. Federal regulations require the housing owner to annually verify the family's income and other information related to eligibility. The information you provide will be used only for the purpose of determining the family's eligibility for the program and **will be kept in strict confidence.**

We are required to complete our verification process in a short time period and would appreciate your prompt response. If this correspondence is being conducted via fax, please return this form to our fax number as it appears above. If you have any questions, please feel free to contact our office. Thank you for your cooperation.

**INFORMATION BEING REQUESTED:**

The individual named above and whose signature below permits the release of this information to the sender of this request, has indicated that he / she requires and will have a live-in caregiver residing with him / her during the next year. As the owner's agent, we are required to obtain a third party verification of this information. The individual has given you as the attending physician with knowledge of conditions requiring the need for a live-in care attendant. Please complete and sign the statement below.

As the attending physician of  *Earlando Samuel*  and with knowledge of this individual's physical and mental health history, I certify that his / her quality of life would be greatly improved with a live-in caregiver. It is not unreasonable that he / she requires the need of a live-in caregiver to maintain independence in the community.

Certification: I attest, under penalty of perjury, that the above information is true and accurate to the best of my knowledge.

*VERONICA H. CERNY MD*
Name / Title of Person Supplying Information

_____
Signature

Firm / Organization  *VERONICA A. CERNY MD*
*1177 S GOVERNORS AVE*
*DOVER, DE 19904*
*302-674-4767*

Date    8/7/12

**RELEASE:** I hereby authorize the release of the requested information. Information obtained under this consent is limited to information that is no older than 12 months. There are circumstances that would require the owner to verify information that is up to 5 years old, which would be authorized by me on a separate consent attached to a copy of this consent.

*Earlando Samuel*
Applicant / Resident

Date    8-1-13

Title 18, Section 1001 of the U.S. Code states that a person is guilty of a felony for knowingly and willingly making false or fraudulent statements to any department of the United States Government  HUD and any owner (or any employee of HUD or the owner) may be subject to penalties for unauthorized disclosures or improper use of information collected based on the consent form  Use of the information collected based on this verification form is restricted to the purposes cited above  Any person, who knowingly or willingly requests, obtains or discloses any information under false pretenses concerning an applicant or participant may be subject to a misdemeanor and fined not more than $5,000  Any applicant or participant affected by negligent disclosure of information may bring civil action for damages, and seek other relief, as may be appropriate, against the officer or employee of HUD or the owner responsible for the unauthorized disclosure or improper use  Penalty provisions for misusing the social security number are contained in the Social Security Act at 208(a), (6) (7) and (8)  Violation of these provisions are cited as violations of 42 U.S.C 408 (a), (6), (7) and (8)

**Thomas P. Gordon**
**County Executive**



**Sophia Hanson**
**General Manager** *Exh. 7*

### Department of Community Services

Date: 11/09/2015

<u>**Earlando  Samuel**</u>
<u>**928 Janvier Ct**</u>
<u>**Middletown DE 19709**</u>

<u>**RE: NOTICE OF RENT: Interim Change**</u>

THE HOUSING ASSISTANCE PAYMENTS CONTRACT ("HAP") entered into between  Greenlawn Apartments and New Cas
County Housing Authority, dated   06/01/2015 on behalf of the LESSEE ("FAMILY"),  Earlando  Samuel, that holds a
CERTIFICATE/VOUCHER for the following unit: 928 Janvier Ct  Middletown

| <u>**PAYMENTS:**</u> | <u>**TOTAL:**</u> |
|---|---|
| HAP Payment | $651.00 |
| Tenant Payment | $199.00 |
| Total Rent to Owner | $850.00 |

<u>**Interim Change Effective date**</u>: 01/01/2016

WE CHANGED YOU TO A 1 BEDROOM VOUCHER SINCE MS. KING IS NO LONGER IN YOUR UNIT. SO YOUR
PORTION HAS NOW INCREASED.

<u>**TO THE TENANT ONLY:**</u>
If you pay $(zero) rent, you may be eligible for a Utility Reimbursement payment of **0.00_**.  **You are reminded that it is illegal
to pay your landlord more than specified.**

> If you disagree with this decision, you may request an informal hearing.  If a hearing is desired, you must request a writter
> request to this office within <u>**10**</u> days of receipt of this notice or your right to a hearing will be waived.

If you have any questions concerning your participation in this program, please call this office between 8:00 a.m. and 4:00 p.m.
Monday through Friday at (302) 395-5600.

Sincerely,

Assunta Lucy

*If you or anyone in your family is a person with disabilities, and you require specific accommodations in order to
fully utilize our program and services, please contact the New Castle County Housing Authority, Terri Stuiber, 77
Read's Way, New Castle, DE  19720.*
**A TTY/TDD is also available for hearing impaired individuals at 302-395-5593.**

*Exh E*

## Earl

| | |
|---|---|
| **From:** | Earl <easee2@gmail.com> |
| **Sent:** | Monday, December 14, 2015 9:48 AM |
| **To:** | 'Stuiber, Terri' |
| **Subject:** | FW: TXX002405 - family comp |

**From:** Earl [mailto:easee2@gmail.com]
**Sent:** Friday, February 14, 2014 8:50 AM
**To:** 'Lucy, Assunta'
**Subject:** RE: TXX002405 - family comp

Good Morning... Beverly was here last month and long term rehab of at least 90 days is her recommendation so I don't expect her back until May.

**From:** Lucy, Assunta [mailto:AScarpitti@nccde.org]
**Sent:** Friday, February 14, 2014 7:45 AM
**To:** 'Earl'
**Subject:** RE: TXX002405 - family comp

How long has she been out of the unit?  And how long until she is back?

**From:** Earl [mailto:easee2@gmail.com]
**Sent:** Thursday, February 13, 2014 2:35 AM
**To:** Lucy, Assunta
**Subject:** RE: TXX002405 - family comp

Not at the present. She had to go into rehab for alcohol abuse.

**From:** Lucy, Assunta [mailto:AScarpitti@nccde.org]
**Sent:** Wednesday, February 12, 2014 8:53 AM
**To:** 'easee2@gmail.com'
**Subject:** TXX002405 - family comp

Does Beverly King still live with you?

[×] This email is free from viruses and malware because avast! Antivirus protection is active.

[×] This email has been checked for viruses by Avast antivirus software.



# COMMUNITY LEGAL AID SOCIETY, INC.
100 W. 10th Street, Suite 801
Wilmington, Delaware 19801
(302) 575-0660                                    Fax (302) 575-0840
www.declasi.org

*Ex h⁹*

December 1, 2015

Earlando Samuel
928 Javier Court
Middletown, DE 19709

**Re: Closed File at Legal Aid**

Dear Mr. Samuel:

I am writing to confirm our conversation yesterday and to let you know that your case in our office is closed because we will be unable to represent you at your informal conference with New Castle County on Thursday.

I suggested that you explain to New Castle County Housing Authority that you did not realize you had to let them know that your previous live-in aid Beverly King never returned to resume caring for you and that other people have been coming in to care for you as needed. However, I did let you know that it is your responsibility always to report any changes in your household to New Castle County. That means as soon as you know someone will not be coming back, you must let New Castle County know. If you want to add someone, you must discuss that with them. The person must go through the appropriate screening criteria and be approved by New Castle County.

I explained that if you want to add your son as a live-in aid, you will need to provide New Castle County with documentation from your doctor that you need the live-in aid. New Castle County may give you a form to complete and have you sign a release giving your doctor permission to provide them with information about your disability and why you need the live-in aid.

As we discussed, if you receive a voucher termination notice from New Castle County after the conference, please feel free to return and we will complete a new intake for you. I am sorry we were unable to assist you at this conference and I hope the matter is successfully resolved.

Sincerely,

Melissa R. Allman
Staff Attorney
(302) 575-0660, ext. 223
mallman@declasi.org

*Exh 10*

Date: January 8th, 2016

State Of Delaware
Office Of Attorney General
820 N French Street
Wilmington, DE 19801

COMPLAINT

I am a 63 year old disabled black male with "invisible disabilities". I reside at 928 Janvier CT., Middletwn, DE. 19709 and until 1-1-2016 possessed a 2 bedroom Housing Choice voucher because I have the need for a Live In Aide. (24 CFR 982.316 - Live-in aide. § 982.316 Live-in aide.

> (a) A family that consists of one or more elderly, near-elderly or disabled persons may request that the PHA approve a live-in aide to reside in the unit and provide necessary supportive services for a family member who is a person with disabilities. The PHA must approve a live-in aide if needed as a reasonable accommodation in accordance with 24 CFR part 8 to make the program accessible to and usable by the family member with a disability.

According to the Americans with Disabilities Act of 1990 (ADA) an individual with a disability is a person who: "Has a physical or mental impairment that substantially limits one or more major life activities ; has a record of such an impairment; or is regarded as having such an impairment."

Invisible Disabilities are medical conditions that interfere with the usual activates of daily life, but are not immediately apparent to others. .They can involve pain, fatigue, mental confusion, medication side effects and more.  It is estimated that 10% of people in the U.S. have a medical condition which could be considered a type of invisible disability. Often, people who are challenged with invisible disabilities, themselves, believe things would work out better if they tried harder.

The term *invisible disabilities* also refers to symptoms such as debilitating pain, fatigue, dizziness, cognitive dysfunctions, brain injuries, learning differences and mental health disorders, as well as hearing and vision impairments.  These are not always obvious to the onlooker, but can sometimes or always limit daily activities, range from mild challenges to severe limitations and vary from person to person.

While people in our society are often willing to be helpful to people in a wheelchair, using a walker or crutches, a white cane, or other sign of impairment, we are often confused by, and judgmental of, those who have no apparent impairment yet seem to require accommodation. We tend to think that if they just tried harder, things would work out better.

*Evh 10*

Unfortunately, people often judge others by what they *see* and often conclude a person can or cannot do something by the way they *look.* This can be equally frustrating for those who may appear *unable*, but are perfectly capable, as well as those who appear *able,* but are not.

International Disability expert, Joni Eareckson Tada, explained it well when she told someone living with debilitating fatigue, "People have such high expectations of folks like you [with invisible disabilities], like, 'come on, get your act together.' but they have such low expectations of folks like me in wheelchairs, as though it's expected that we can't do much"

"You know, it's that invisible nature of an illness that people don't understand," says Wayne Connell, the founder and head of the Invisible Disabilities Association. He started the group after his wife was diagnosed with Lyme disease and multiple sclerosis.

"We'd park in disabled parking and she didn't use a wheelchair or a cane, and so people would always give us dirty looks and scream at us," he recalls.

Public Servant, Assunta Lucy is a Housing Program Assistant with the Section 8 program of the New Castle County department of community services, 77 Reads Way, New Castle, DE., 19720.

Public Servant, Terri Stuiber is the assistant administrator of the Department Of Community Services, Division Of Community Development and Housing, , 77 Reads Way, New Castle, DE., 19720

Public Servant, Robert R. Rizzo is the administrator of the Department Of Community Services, Division Of Community Development and Housing, , 77 Reads Way, New Castle, DE., 19720

("Public servant" means any officer or employee of the State or any political subdivision thereof, including legislators and judges, and any person participating as juror, advisor or consultant in performing a governmental function but the term does not include witnesses. This definition includes persons who are candidates for office or who have been elected to office but who have not yet assumed office.)

I received my two bedroom voucher on October 4, 2012 after a HUD approved live in aide verification (exh 1) was submitted to Delaware State Housing Authority, Section 8, by my primary care physician at that time, Dr Eva Cerney and was confirmed by DSHA in a letter dated August 2nd, 2012. (exh 2)  Prior to that I had a one bedroom voucher.  I lived in Smyrna, DE at that time but I found a two bedroom apartment in Middletown, DE. The apartment in Middletown is under the jurisdiction of the New Castle County department of community services, Section 8 department, 77 Reads Way, New Castle, DE., 19720 which meant I had to transfer from the DSHA to them. I moved to Middletown, along with my live in aide, Beverly King, in June of 2013.

*Exh 10*

My voucher was transferred to the Section 8 department of New Castle County. They don't give out copies of the paperwork in regards to transfers (Porting Out or In).

On November 14th, 2015, I received a letter (exh 3) from the Assunta Lucy, Housing Program Assistant with the Section 8 program of the New Castle County department of community services, 77 Reads Way, New Castle, DE., 19720, that my two bedroom voucher had been taken away from me and my rent would be increased by 273% effective 1-1-2016. The reason given was "Beverly King is no longer in your unit". I found that to be shocking because Beverly shouldn't have been in the system because I had taken Beverly out of the household composition at re-certification time in February 14 of 2014 as evidenced through e mail communication with Assunta Lucy (exh 4). (Re-certification documentation is not given to the recipient). I had and still have family members and friends acting in the capacity of my live in aide since Beverly King was gone. Nothing had been said about my live in aide situation by anyone from the Department Of Community Services, Division Of Community Development and Housing, Section 8 department since February of 2014.

I requested an informal conference in regards to the letter dated 11-09-2015 (exh 5). The conference was scheduled for December 3, 2015 (exh 6) . I attempted to resolve this by simply adding someone as my live in aide (exh 7) to no avail. Due to a psychological impairment that precludes me from verbally effectively self-representing myself, I sought help on 11-25-2015 from Community Legal Aid. Due to the holidays coming up and the timing of the informal conference, CLA sought to get a postponement but was not given one by the Department Of Community Services and didn't represent me so I had to either not go and forfeit my rights or go and hope for the best. I had requested documentation, etc., in my Request For An Informal Conference but those requests weren't honored. What I did get was a emergency inspection (exh 8) of my home on December 2, 2015 by the section 8 department one day before the informal review. I didn't see a legitimate purpose for it but it did alarm and annoy me.

I went to the haring not knowing what to expect and I was early. I was greeted by Terri Stuber,  the assistant administrator of the Department Of Community Services, Division Of Community Development and Housing, , 77 Reads Way, New Castle, DE., 19720 and Robert R. Rizzo is the administrator of the Department Of Community Services, Division Of Community Development and Housing, , 77 Reads Way, New Castle, DE., 19720. These two conducted the hearing. Rizzo opened up the discussion with the statement "We will not discuss your disabilities" and moved on to the issue of the live in aide. Their stand was that I didn't tell them that Beverly King was not in the household for prior 21 months. I had evidence to the contrary but I had gotten frustrated and forgot that I even had it. Subsequently I did submit it through e mail (exh 9 and 4).

The hearing ended with questions about my income, whether or not I drive and what kind of a care I have.  I was told by Terri Stuiber that I would have to submit a statement from my doctor that says " I need 24 hour care" on her letterhead. The HUD approved live in aide verification form (exh 10) is on the the Department Of Community Services, Division Of Community Development and Housing, Section 8 website and the language

*Exh 10*

is entirely different from what Terri Stuber told me that I needed. That is the one that I submitted (exh 10) completed by my current primary care doctor. The live in aide verification form that my doctor used originally is exh 1 submitted to the Delaware State Housing Authority. In the context of civil rights law, unlawful discrimination refers to unfair or unequal treatment of an individual (or group) based on certain characteristics, including disability. The Informal Review Conference Client Counseling Report is exh 11.

I complied with the requests with the exception of the letter from my doctor with the language " I need 24 hour care" that I was told by Terri Stuber to get. My doctor filled out and signed the live in aide verification that I had downloaded from the Section 8 website (exh 10) and submitted to Terri Stuber. This verification . was and is still not being acknowledged and rejected by Terri Stuber. I had conversations with Terri Stuber by e mail (exh 12) in regards to the live in aide verification and how that much of an increase in rent severely impact me financially to no avail. 199.00 may not seem to be much but I only get 753.00 per month with car payment, insurance, utilities, food and credit card payments. I would have to default or be evicted. They didn't even calculate utility allowances or medical expenditures to arrive at my tenant share of the rent.

After I got back home, I found and submitted evidence to Terri Stuber that I had indeed taken Beverly King off of my household composition as acknowledged by Assunta Lucy (exh 12). I believe that the issue with Beverly King almost 2 years after the fact is a smokescreen set up to cloud the issue of practices of discrimination against me. As evidenced by conversations with Terri Stuiber (exh 13) and the behaviors of these public servants, the reason that I am being treated unfairly is solely because of my "invisible disabilities" and these public servants have taken it upon themselves to take what is rightfully mine while denying me due process of the law in doing so, in violation of the The Fourteenth Amendment which prohibits states from violating an individual's rights of due process and equal protection of the law, and Title II of the ADA **Part 35 Nondiscrimination on the Basis of Disability in State and Local Government Services, Subpart B—General Requirements**

**§ 35.130 General prohibitions against discrimination**

- (a) No qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity.

and being discriminated against me solely because of my 'invisible disabilities". In a nutshell, I didn't look like I warrant a live in aide to them, so I am being denied that benefit which I am entitled to under the law, amongst other things, by these public servants. What my doctors and other medical professionals assessments of me doesn't matter. Also, this situation reeks of state violations in regards to official misconduct and

Exh 10

abuse of authority. I have been harmed financially and emotionally by the conduct of above named public servants.

Respectfully submitted,

Earlando Samuel
928 Janvier Court
Middletown, DE 19709
Easee2@gmail.com
443 270 9413

Exh 1/

Exh 1/

**FAIRVILLE MANAGEMENT COMPANY**
**Greenlawn Apartments**
**Middletown Manor**
**910 Janvier Court**
**Middletown, DE   19709**
**(302) 376-1169 (PHONE)**
**(302) 376-1026 (FAX)**

June 7, 2018

Mr. Erlando Samuels
928 Janvier Court
Middletown, DE  19709

Dear Mr. Samuels:

Fairville Management Company, LLC, on behalf of the Property Owner is requesting that you
please provide a copy of your Renters Policy, Contact Person and their Phone Number regarding
the water damage to your unit on Friday, November 24, 2017.

Thank you in advance,

Naomi V. Scott
Property Manager

**IV.    Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.

Financial - Loss of personal property $6100.00 (Six thousand and one hundred dollars)

Financial - Reimbursement for utilities $208.00 (Two hundred and eight dollars)

Emotional distress, pain and suffering - Therapy and drug treatment.

**V.    Relief:**

State what you want the Court to do for you and the amount of monetary compensation, if any, you are seeking, and the basis for such compensation.

1. Compensatory damages in the amount of $6208.00 for the loss of my personal belongings. To be shared equally among the defendants.

2. General damages in the amount of $3,000,000.00 for mental anguish, emotional pain and suffering and future out of pocket psychological and medical treatment. To be shared. equally among the defendants.

3. Punitive damages in the amount of $3,000,000.00 to punish the defendants. The defendants conduct was more than malicous and intentional. More than mere indignities, annoyances or petty oppressions but so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. To be shared equally among the defendants.

4. Reasonable attorney fees, litigation expenses and costs incurred.

5. Such other relief as the Court deems just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this _24_ day of _February_ _____, 20 _20_.

Signature of Plaintiff _____

Mailing Address  207 Parker Place

Glen Mills

Pennsylvania 19342

Telephone Number  610 241 7537

Fax Number *(if you have one)* _____

E-mail Address  easee2@gmail.com

Note:   All plaintiffs named in the caption of the complaint must date and sign the complaint. Prisoners must also provide their inmate numbers, present place of confinement, and address.


For Prisoners:

I declare under penalty of perjury that on this _____ day of _____, 20_____, I am delivering this complaint to prison authorities to be mailed to the Clerk's Office of the United States District Court for the Eastern District of Pennsylvania.


Signature of Plaintiff: _____

Inmate Number _____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA    **2 0    1 0 7 4**

DESIGNATION FORM
*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: _____ 207 Parker Place, Glen Mills, PA 19342 _____

Address of Defendant: _____ 77 Reads Way, New Castle DE 19720, 910 Janvier Ct Middletown, De 19720 _____

Place of Accident, Incident or Transaction: _____ 928 Janvier Ct, Middletown, DE 19708 _____

---

**RELATED CASE, IF ANY:**

Case Number: _____    Judge: _____    Date Terminated: _____

Civil cases are deemed related when *Yes* is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?    Yes ☐    No ☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court?    Yes ☐    No ☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?    Yes ☐    No ☑

I certify that, to my knowledge, the within case ☐ is / ☑ **is not** related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: _____    _____    _____
                     *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

---

**CIVIL: (Place a √ in one category only)**

**A.    *Federal Question Cases:***

☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
☐ 2. FELA
☐ 3. Jones Act-Personal Injury
☐ 4. Antitrust
☐ 5. Patent
☐ 6. Labor-Management Relations
☑ 7. Civil Rights
☐ 8. Habeas Corpus
☐ 9. Securities Act(s) Cases
☐ 10. Social Security Review Cases
☐ 11. All other Federal Question Cases
      *(Please specify):* _____

**B.    *Diversity Jurisdiction Cases:***

☐ 1. Insurance Contract and Other Contracts
☐ 2. Airplane Personal Injury
☐ 3. Assault, Defamation
☐ 4. Marine Personal Injury
☐ 5. Motor Vehicle Personal Injury
☐ 6. Other Personal Injury *(Please specify):* _____
☐ 7. Products Liability
☐ 8. Products Liability – Asbestos
☐ 9. All other Diversity Cases
      *(Please specify):* _____

---

**ARBITRATION CERTIFICATION**
*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, _____ Earlando Samuel _____, counsel of record *or* pro se plaintiff, do hereby certify:

☑ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs:

☐ Relief other than monetary damages is sought.

DATE: 2 - 24 - 2020    _____    _____
                       *Attorney-at-Law / Pro Se Plaintiff*    *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Earlando Samuel, pro se | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| New Castle County Housing Authority, | : | NO. **20    1074** |
| et al | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)   In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.     ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.     ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.     ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
exposure to asbestos.     ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)     (X)

(f) Standard Management – Cases that do not fall into any one of the other tracks.     ( )

| | | |
|---|---|---|
| February 24, 2020 | Earlando Samuel, pro se | |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610 241 7537 | | easee2@gmail.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

PRIORITY MAIL 1-DAY™

10.60 Oz

1021

EXPECTED DELIVERY DAY:  02/26/20

C019

SHIP
TO:
  601 MARKET ST
  RM 2609
  PHILADELPHIA PA 19106-1732

PRESS FIRMLY TO SEAL

FROM:
E. Samuel
207 Parke Place
Glen Mills Pa 19843

USPS TRACKING®NUMBER



9505 5157 9559 0055 4784 40

Clerk Of Court, EDPa
James A. Byrne U.S. Courthouse
Room 2609
601 Market Street
Phila - Pa 19106



This packaging is the property of the U.S. Postal Service® and is provided solely ...  violation of federal law. This packaging is not for resale. EP14F © U.S. Postal Service: July 2013. All rights reserved

July 2013
x 9.5

## VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE



UNITED STATES
POSTAL SERVICE®